IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANNETTE LAWSON,                              )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     )    1:16CV369
                                             )
NANCY A. BERRYHILL,[1]                       )
Acting Commissioner of Social Security,      )
                                             )
            Defendant.                       )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Annette Lawson ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for Supplemental Security Income on February 28, 2012, alleging a disability onset date of January 1, 2000. (Tr. at 26, 204-12.)[2] Her application was denied initially (Tr. at 102-20, 136), and that decision was upheld upon

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

reconsideration (Tr. at 121-36, 141-45).  Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. at 148-55, 160-203.)  Following the subsequent hearing on July 14, 2014, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act.  (Tr. at 26-43.)  On December 15, 2015, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review.  (Tr. at 4-9.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine, mild degenerative joint disease of the right knee, osteoarthritis, bilateral carpal tunnel syndrome, obesity, and an affective disorder.

(Tr. at 28.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 29-32.) Therefore, the ALJ assessed Plaintiff's RFC and determined that:

> the claimant has the residual functional capacity to perform work at the light exertional level except that she [can] stand and/or walk for up to a total of 4 hours in an 8-hour workday, and can sit for up to a total of 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs; can never climb ladders,

5

ropes, or scaffolds; can occasionally balance; and can frequently stoop, kneel, crouch, and crawl. She can frequently bilaterally handle and finger. She can frequently reach overhead with [her] dominant arm. She can understand, remember, and perform work tasks at GED Reasoning Level 03 and can perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties on a monthly basis).

(Tr. at 32.) At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 41.) However, he concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 41-43.)

Plaintiff now argues that the ALJ: (1) failed to recognize credibly established limitations by Plaintiff's examining physicians when formulating the RFC and (2) failed to properly account for Plaintiff's moderate limitation in maintaining concentration, persistence, and pace. After reviewing the ALJ's decision, the Court agrees that the ALJ's formulation of the RFC in the present case with respect to Plaintiff's mental limitations fails to comport with the Fourth Circuit's holdings in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) and Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656 (4th Cir. 2017), as further set out below.

In several recent cases, including both Mascio and Patterson, the Fourth Circuit has addressed the need for ALJs to include a function-by-function analysis and sufficient explanation in making the RFC determination. See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (holding that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion" (internal quotation omitted)). Failing to do so renders judicial review impossible, such that the reviewing court cannot conclude that the ALJ's determination

is supported by substantial evidence. For example, in Mascio, the Fourth Circuit considered a case in which the ALJ found that Plaintiff suffered from moderate limitations in concentration, persistence, and pace at step three of the sequential analysis, but then failed to specifically address the functional limitations in setting the RFC. Mascio, 780 F.3d at 638. The Fourth Circuit noted that:

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

In the present case, as in Mascio, the ALJ found Plaintiff moderately limited in terms of concentration, persistence, or pace at step three of the sequential analysis. In addition, the ALJ elaborated on the impact of Plaintiff's limitation as follows:

> The consultative psychological examination report reflected that the claimant's memory and immediate retention and recall were all considered fair. However, her ability to perform tasks requiring sustained concentration and persistence was significantly limited by mood symptoms and estimated below average intelligence. . . . While the record shows that the impairment interferes with her ability to sustain focused attention and concentration to the extent that it hinders her from the timely completion of tasks commonly found in work settings, [it] does not do so in a marked manner.

(Tr. at 31.) Thus, the ALJ specifically concluded that Plaintiff suffered from moderate limitations in concentration, persistence, and pace; that her ability to perform tasks requiring sustained concentration and persistence was significantly limited; that her mental impairments interfered with her ability to sustain focused attention and concentration; and that her mental

7

impairments hindered her from the timely completion of tasks commonly found in work settings in a moderate, but not marked, manner.

However, after making these findings, the ALJ then determined Plaintiff's RFC with respect to her mental limitations as follows:

> She can understand, remember, and perform work tasks at GED Reasoning Level 03 and can perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can have frequent interaction with coworkers and the general public. She can perform work that involves routine tasks (i.e., no more than frequent changes in core work duties on a monthly basis).

(Tr. at 32.) Notably, the ALJ's conclusion that Plaintiff could "perform productive work tasks for up to an average of 98 to 100% of an 8-hour workday" fails to correlate with the ALJ's step three finding that Plaintiff's "impairment interferes with her ability to sustain focused attention and concentration to the extent that it hinders her from the timely completion of tasks commonly found in work settings." (Tr. at 31, 32.) In fact, productivity of 98 to 100% correlates with *no* limitation in concentration, persistence, or pace, whereas the ALJ's step three finding indicates specifically that Plaintiff's "ability to perform tasks requiring sustained concentration and persistence [is] *significantly* limited." (Tr. at 31) (emphasis added). The ALJ's decision does not include any analysis of this discrepancy or any reasoning or basis to support the determination that Plaintiff could perform productive work tasks for an average of 98 to 100% of an 8-hour workday, particularly given that the ALJ also found that Plaintiff's mental impairments significantly limited her ability to perform tasks requiring sustained concentration and persistence, impaired her ability to maintain attention and concentration, and impaired her ability to timely complete tasks found in work settings. Thus, as in Mascio, the ALJ's

8

determination as step three is inconsistent with the RFC determination, but the ALJ failed to include any explanation or otherwise provide reasoning or support for that conclusion.[5]

In the decision, the ALJ states that Plaintiff's "moderate limitations in concentration, persistence, and pace, inform the limitations in task complexity and productivity" included in the RFC. (Tr. at 41.) However, Mascio requires more than an ALJ's bare contention that he properly translated step three findings into corresponding RFC limitations. See 780 F.3d at 638. Here, despite the ALJ's claim that he limited Plaintiff to less complex and productive tasks in light of her moderate limitations in concentration, persistence, and pace, he ultimately included no RFC limitations that meaningfully addressed the limitations he had previously found and no explanation for this omission. The ALJ's failure to adequately account for all of Plaintiff's mental limitations in accordance with Mascio, and his failure to explain those

---

[5] Moreover, the RFC limitation to a "GED Reasoning Level of 03" also fails to address Plaintiff's moderate limitations in concentration, persistence, or pace. Indeed, the RFC limitation to "GED Reasoning Level 03" is itself without any explanation or analysis. In evaluating the evidence, the ALJ gave significant weight to state agency DDS reviewer Dr. Albertson, who concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, but could "understand and remember instructions to perform simple tasks" and could "maintain concentration to perform simple tasks." (Tr. at 131-32.) Issues remain with respect to how an ability to understand simple instructions and perform simple tasks correlates to the Reasoning Levels in the Dictionary of Occupational Titles. See, e.g., Mullis v. Colvin, No. 1:11CV22, 2014 WL 2257188, at *1 (M.D.N.C. May 29, 2014) (Osteen, C.J.) (finding an apparent conflict between an RFC limitation to simple, routine, repetitive tasks at a low production pace and low stress environment and a VE's testimony that Plaintiff could perform a job to which the DOT assigned a Reasoning Level of 3); see also Henderson v. Colvin, 643 Fed. App'x 273, 277 (holding that "there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions," and "the VE's conclusory statement that a conflict did not exist was insufficient"). In this case, it is not clear if the ALJ intended to adopt a definition of "GED Reasoning Level 03" different than that contained in the Dictionary of Occupational Titles, or if the ALJ took the position that a Reasoning Level 3 was consistent with a limitation to understanding simple directions and performing simple tasks (without vocational expert testimony addressing the issue), or if the ALJ instead concluded that Plaintiff could nevertheless perform at a Reasoning Level 03 despite the greater limitations in the opinion evidence. Thus, there is no "logical bridge" or explanation supporting that portion of the RFC determination. Even if the ALJ intended this limitation to reflect a limitation to simple, routine tasks, such a limitation would still fail to explain how this RFC addressed the prior finding at step three concluding that Plaintiff's mental impairments interfered with her ability to sustain focused attention and concentration and hindered her "from the timely completion of tasks commonly found in work settings."

conclusions in a manner sufficient to allow for judicial review, renders his decision unsupported by substantial evidence. Remand is therefore required for the ALJ to properly address Plaintiff's limitations in concentration, persistence, and pace.

Finally, the Court notes that Plaintiff also contends that the ALJ failed to include limitations established by her examining physicians with regard to her limitations in handling, fingering, and reaching overhead as a result of her carpal tunnel syndrome. As noted by the ALJ, Plaintiff previously worked at a poultry processing plant but stopped working in 2010 due to carpal tunnel issues. (Tr. at 39, 74-75.) The medical record reflects that Plaintiff's work at the poultry plant involved cutting with the right hand while pulling with the left, and she began having difficulty with that work and sought treatment for wrist and finger pain and numbness beginning in October 2009. (Tr. at 415.) The ALJ noted that surgery had been recommended for carpal tunnel release, but Plaintiff had delayed surgery and orthopedic consultation due to her lack of insurance and inability to pay. (Tr. at 39.) The ALJ also summarized the treatment records of Plaintiff's treating physician Dr. Conti, who diagnosed Plaintiff with carpal tunnel syndrome confirmed by electrodiagnostic studies and recommended no repetitive work and only 1-2 pounds lifting (Tr. at 35, 415), but the ALJ failed to further evaluate and assign weight to this recommendation. The ALJ noted that a Vocational Rehabilitation report from Dr. Ahmed in 2011 concluded that Plaintiff had bilateral carpal tunnel syndrome and was capable of work with no "constant repetitive use of the hands," but the ALJ gave that report little weight. (Tr. at 34, 40, 300.) The ALJ also noted that following a consultative examination by Dr. Gelfand, Plaintiff's diagnoses included probable bilateral carpal tunnel syndrome, and decreased range of motion in her right

shoulder, with her ability to lift, carry, and handle objects moderately impaired (Tr. at 35, 303), but the ALJ also gave that opinion little weight because it was "vague and provide[s] no useful insight into assessing claimant's function limitations." (Tr. 40.) The ALJ instead gave significant weight to the "DDS assessments." (Tr. at 40.) As to those assessments, the state agency DDS reviewer, Dr. Huffman-Zechman, concluded that Plaintiff was capable of frequent, but not continuous handling/fingering and frequent but not continuous overhead reaching with her right upper extremity. (Tr. at 131.) This conclusion is consistent with the RFC ultimately adopted by the ALJ. However, Dr. Huffman-Zechman's summary of the evidence regarding Plaintiff's carpal tunnel syndrome states "2009 MER noted CTS. x-ray of bilat wrists was neg." (Tr. at 126.) In fact, the medical evidence reflects that Plaintiff's 2009 x-rays were negative for fracture and arthritis, but that carpal tunnel syndrome was confirmed by electrodiagnostic studies. (Tr. at 415, 390-91.) Indeed, the ALJ recognized that Plaintiff's 2009 nerve conduction study showed moderate bilateral median neuropathy at the wrist, as well as possible right ulnar neuropathy at the elbow. (Tr. at 34, 391.) It is not clear if this evidence was presented or considered by Dr. Huffman-Zechman, on whom the ALJ relied in reaching the RFC determination. In any event, the Court need not consider this issue further at this time in light of the remand determination set out above, and any of these issues raised by Plaintiff can be further addressed on remand as appropriate.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent,

Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 8th day of September, 2017.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge